Eric **STATTIN**, Plaintiff,

v.

**RESOLUTION TRUST CORPORATION,** in its corporate capacity, in its capacity as Receiver for Florida Federal Savings, F.S.B., and in its capacity as Receiver for Florida Federal Savings Bank, Defendants.

Bruce **BEERY**, Plaintiff,

v.

**RESOLUTION TRUST CORPORATION,** in its corporate capacity, in its capacity as Receiver for Florida Federal Savings, F.S.B., and in its capacity as Receiver for Florida Federal Savings Bank, Defendants.

Charles **BISSETT**, Plaintiff,

v.

**RESOLUTION TRUST CORPORATION,** in its corporate capacity, in its capacity as Receiver for Florida Federal Savings, F.S.B., and in its capacity as Receiver for Florida Federal Savings Bank, Defendants.

Eugene L. **WILLIAMS, Jr.**, Plaintiff,

v.

**RESOLUTION TRUST CORPORATION,** in its corporate capacity, in its capacity as Receiver for Florida Federal Savings, F.S.B., and in its capacity as Receiver for Florida Federal Savings Bank, Defendants.

Nos. 93–852–CIV–T–21A, 94–1567–CIV–T–21E, 94–1568–CIV–T–21A and 94–1569–CIV–T–21B.

United States District Court, M.D. Florida, Tampa Division.

April 28, 1995.

Jeffrey A. Tew, Kirkpatrick & Lockhart, Miami, FL, Charles Lee Eisen, Kirkpatrick & Lockhart, Washington, DC, for Eric Stattin.

John C. Dew, Harris, Barrett, Mann & Dew, St. Petersburg, FL, for Bruce A. Beery, Charles F. Bissett, Eugene L. Williams, Jr.

Anne S. Mason, Mason & Associates, P.A., Mangrove Bay, Clearwater, FL, for Resolution Trust.

### ORDER

NIMMONS, District Judge.

This cause comes before the Court on Plaintiff Stattin's Motion for Summary Judgment (Dkt. 5) and on Defendants' Cross–Motion for Summary Judgment (Dkt. 35).[1] Pursuant to the Court's March 28, 1995 Order (Dkt. 51), Plaintiffs in consolidated Case Nos. 94–1567–CIV–T–21E, 94–1568–CIV–T–21A, and 94–1569–CIV–T–21B have informed the Court that they have no objection to the Court's rulings on the motions for summary judgment filed by Plaintiff Stattin and Defendants standing over to them and binding them in this litigation.[2]

The Plaintiffs in each of these consolidated cases were employed by Florida Federal Savings and Loan Association ("FFS & L"). FFS & L entered agreements ("Retirement Benefit Agreements") with each Plaintiff in which FFS & L agreed to pay monthly benefits to each Plaintiff following retirement. FFS & L began making payment of benefits to each Plaintiff under the parties' respective agreements. The successor to FFS & L, Florida Federal Savings Bank ("FFSB"), continued making those retirement benefit payments up until approximately October 31, 1990.

On November 9, 1990, the Director of the Office of Thrift Supervision ("OTS") placed FFSB in federal receivership under the control of the Resolution Trust Corporation ("RTC"). The RTC, in its receivership capacity, took possession of FFSB's assets and transferred certain assets to a newly-created institution, Florida Federal Savings, F.S.B. ("Florida Federal"). RTC was subsequently appointed receiver of Florida Federal.

On February 19, 1991, the RTC, pursuant to 12 U.S.C. §§ 1441a(b)(4)(A) and 1821(e)(1), disaffirmed the Retirement Benefit Agreements to which Plaintiffs were parties. The RTC sent letters of disaffirmance to each Plaintiff, disaffirming the subject agreements and recommending that each Plaintiff take steps necessary to protect his interests. Pursuant to 12 U.S.C. § 1821, the Plaintiffs filed proofs of claim against the insolvent institution to obtain a distribution from the assets of the institution. On April 17, 1992, the RTC allowed Plaintiff Bissett's claim for $124,395.50 and allowed Plaintiff Williams' claim for $562,594.42, their total unpaid retirement benefits, and issued them Receiver's Certificates in the amount of their unpaid benefits. On May 6, 1992, the RTC allowed Plaintiff Beery's claim for $369,459.00, the total amount of his unpaid retirement benefits, and issued him a Receiver's Certificate in that amount. On September 17, 1992, the RTC allowed Plaintiff Stattin's claim for $495,285.48, his total unpaid retirement benefits, and issued him a Receiver's Certificate in that amount. The RTC sent to each Plaintiff, along with their Receiver's Certificates, a letter which indicated that "You may receive payment of your claim through periodic dividend distributions on a pro rata basis along with all other approved claimants."

1. Defendants have filed herein a Motion for Leave to File a Reply Brief in Support of Cross–Motion for Summary Judgment (Dkt. 43). Upon due consideration, Defendants' motion is DENIED.

2. Plaintiffs Williams, Beery and Bissett indicate that their cases differ from Plaintiff Stattin's case only in that they were issued Receiver's Certificates prior to the enactment of Florida's Depositor Preference Statute, while Plaintiff Stattin was issued his Receiver's Certificate following enactment of the statute. Plaintiffs Williams, Beery and Bissett indicate that the Court's rulings on the cross-motions for summary judgment should not bind them to the extent that the date of issuance of the Receiver's Certificate becomes a significant fact in the Court's decision. The Court's rulings herein are not, however, affected in any manner by the date of issuance of a Receiver's Certificate. Therefore, the Court's rulings herein will bind the Plaintiffs in the consolidated cases.

On July 3, 1992, the Florida Legislature enacted Florida Statutes, Section 658.84 ("Florida's Depositor Preference Statute"). Section 658.84 provides in relevant part:

> (2) Unsecured claims for payment against any financial institution shall have the following priority for any distribution made after July 3, 1992:
>
> > (a) Expenses of the liquidation of the receivership estate;
> >
> > (b) State claims;
> >
> > (c) Approved claims for a "deposit," as that term is defined in 12 U.S.C. § 1813(1);
> >
> > (d) Approved claims for other general creditors....

Plaintiffs Bissett, Beery, and Williams received their Receiver's Certificates prior to the enactment of Section 658.84, while Plaintiff Stattin received his Receiver's Certificate subsequent to the enactment of Section 658.84.

Following enactment of the statute, the RTC sent notices to Plaintiffs to inform them of the impact of Section 658.84 upon their receivership claims. The "Important Notice to General Creditor Claimants" informed the failed institution's general creditors of the enactment of Florida's Depositor Preference Statute and indicated that "[t]his action means that all depositors (including the RTC as subrogee for uninsured depositors) have priority over other general creditor [sic] for payment against any financial institution ... The claims of the former association's depositors, and all other claimants of the former institution who have higher priority MUST be paid in full (100%) before any distributions will be made to the general creditors. For this reason, it is unlikely that any funds will be available for distribution to the general creditors."

Following receipt of this notice, Plaintiffs filed their respective actions. Plaintiffs seek a declaratory judgment that Section 658.84, Florida's Depositor Preference Statute, "be construed to apply only to distributions occurring with respect to receiverships commenced after July 3, 1992, the effective date of the Statute." Each Plaintiff also alleges a claim of unjust enrichment and seeks specific relief against the RTC in the amount of his unpaid retirement benefits.

Several statutory provisions and regulations govern the manner in which the RTC determines claims and distributes monies obtained from the liquidation of an insured depository institution. The RTC, as receiver, has authority to determine whether to allow or disallow a claim filed by a creditor of a failed institution. 12 U.S.C. § 1821(d)(5). The receiver then has the discretion to pay those claims which it has allowed to the extent that funds are available to pay the claims. 12 U.S.C. § 1821(d)(10).

At the time the RTC became receiver of FFSB, applicable statutory authority required the RTC or FDIC, as receiver of an institution, to retain for itself the portion of the amounts realized from any liquidation which the receiver was entitled to receive in connection with the subrogation of the claims of depositors. The receiver was then required to pay depositors and other creditors the net amounts available for distribution to them. 12 U.S.C. § 1821(d)(11). At that time, the RTC and FDIC prioritized the unsecured claims against a failed institution or a receiver of the institution, for the purpose of distributing funds, pursuant to 12 C.F.R. § 360.2 ("Section 360.3").[3] That section provides:

> (a) Unsecured claims against an association or the receiver that are proved to the satisfaction of the receiver shall have priority in the following order: ...
>
> (6) Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated, except as provided in paragraphs (a)(1) through (a)(5) of this section, provided, however, that if the association is chartered and was operated under the laws of a state that provided a priority for holders of

---

**3.** At the time the parties submitted their memoranda, 12 C.F.R. § 360.2 was the regulatory provision which set priorities for unsecured claims. However, on January 21, 1994, subsequent to the filing of the memoranda, that provision was redesignated at 12 C.F.R. § 360.3.

withdrawable accounts over such other claims or general creditors, such priority within this paragraph (a)(6) shall be observed by the receiver; and provided further, that if deposits of a Federal association are booked or registered at an office of such association that is located in a State that provides such priority with respect to State-chartered associations, such deposits in a Federal association shall have priority over such other claims or general creditors, which shall be observed by the receiver. . . .

Section 360.3 became effective on August 15, 1988, and originally established a priority structure for unsecured claims applicable to all FSLIC receiverships under 12 U.S.C. § 596c. 53 Fed.Reg. 30665 (1988).[4]

However, in 1993 Congress amended 12 U.S.C. § 1821 by establishing a national priority scheme for distribution of amounts realized from the liquidation of an insured depository institution. The distribution scheme gives a priority to "[a]ny deposit liability of the institution" over general creditors of the institution. 12 U.S.C. § 1821(d)(11) (entitled "Depositor preference"). Nevertheless, the 1993 amendment does not affect the priority of Plaintiffs' claims, as it applies only to depository institutions for which receivers were appointed after the date of the enactment of the amendments on August 10, 1993. Pub.L. No. 103–66 § 3001(c) (1993).

In support of summary judgment, Plaintiffs argue that their priority rights to a distribution of the assets of FFSB became fixed on the date on which the OTS placed FFSB in federal receivership under the control of the RTC. According to Plaintiffs, the statutory and regulatory scheme governing Plaintiffs' priorities at that time provided Plaintiffs a right to share in the assets of Florida Federal equally with FFSB's depositors and other general creditors, as Florida had not yet enacted a depositor preference statute when the RTC commenced its receivership. Plaintiffs assert that application of Section 658.84 would have a retrospective effect by lowering the priority of their claims in the scheme governing distribution of the

institution's assets. Plaintiffs argue that the statute cannot be applied retroactively because the Florida Legislature did not expressly indicate in the statute an intent to apply the statute to reorder priorities established prior to its enactment. Plaintiffs further contend that the RTC's retroactive application of the statute to deny them of their benefits violates Florida and federal constitutional principles.

Defendants respond that they applied Section 658.84 to Plaintiffs' distributions in accordance with 12 C.F.R. § 360.3, which required a receiver to observe a priority given to depositors under a state's depositor preference statute. Defendants argue that the plain language and legislative history of Section 658.84 clearly indicate that the statutory priorities govern distributions from any depository institution, regardless of the date it was placed in receivership. Defendants further assert that Section 658.84 has no retroactive effect because it does not impact amounts that were distributed prior to the enactment of Section 658.84. Lastly, Defendants note that even if the statute has a retroactive effect on established distribution priorities, an application of the statute does not violate constitutional or state-law principles.

██ Under Florida law, substantive statutes are presumed to operate prospectively, unless the Legislature clearly expresses that it intends the statute to operate retrospectively. *Alamo Rent–A–Car v. Mancusi,* 632 So.2d 1352, 1358 (Fla.1994) (citing *State v. Lavazzoli,* 434 So.2d 321 (Fla.1983) and *Walker & LaBerge, Inc. v. Halligan,* 344 So.2d 239 (Fla.1977)). In contrast, a procedural or remedial statute applies retrospectively to cases pending at the time of the statute's enactment. *Alamo Rent–A–Car,* 632 So.2d at 1358. The presumption of prospective application of a substantive statute is particularly strong when retroactive application of the law would "impair or destroy existing rights." *Id.* at 1358. Florida's standard for determining when a statute operates retrospectively resembles the standard set forth by the United States Supreme Court in

4. The provision establishing such priorities was originally set forth at 12 C.F.R. § 569c.11(a)(6), but was subsequently redesignated on several occasions.

*Landgraf v. U.S.I. Film Products, Inc.,* ——
U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229
(1994). In *Landgraf,* the Supreme Court
held that "when a case implicates a federal
statute enacted after the events in suit, the
court's first task is to determine whether
Congress has expressly prescribed the stat-
ute's proper reach." *Id.* at ——, 114 S.Ct. at
1505. In the absence of express legislative
intent regarding the statute's application to
pre-enactment events, a court must deter-
mine whether application of the statute
would have a retroactive effect by impairing
rights held by a party when he acted, impos-
ing new duties with respect to past acts, or
increasing liability for past conduct. If the
statute has such a retroactive effect, a court
must presume that it does not govern pre-
enactment conduct, absent clear congression-
al intent that it applies to the events at issue.
*Id.* at ——, 114 S.Ct. at 1505.

■ As a preliminary matter, the Court
notes that its analysis of the retroactivity
issue is not altered by the fact that the RTC
applied the statute to Plaintiffs' distributions
in accordance with the rules governing its
conduct, set forth at 12 C.F.R. § 360.3. The
parties do not dispute that Section 360.3
governed the manner in which the RTC
made distributions, and required the RTC to
follow state depositor preference statutes
when establishing distribution priorities.[5]
Nonetheless, the RTC's application of Sec-
tion 658.84 raises an issue concerning the

statute's scope of applicability, just as such
issue would have been raised through appli-
cation of the statute by an entity not gov-
erned by Section 360.3.[6]

■ The language of Section 658.84 pro-
vides a clear indication that Florida's Legis-
lature intended the priority scheme therein
to govern any distribution of a failed institu-
tion's assets made after July 3, 1992. Sec-
tion 658.84 expressly states that for "any
distribution made after July 3, 1992," claims
for payment shall have the priorities listed in
that section. Therefore, the statute not only
prioritizes claims but also applies the priori-
ties therein to a specified group of distribu-
tions on those claims. Plaintiffs ask the
Court to impose the condition upon applica-
tion of Section 658.84 that its priorities only
to distributions from receiverships of finan-
cial institutions commenced after July 3,
1992. However, there is no indication what-
soever from the express terms of Section
658.84 that the Legislature intended to limit
the application of the distribution scheme
therein by the date on which the financial
institution entered receivership. Instead,
the statutory language of Section 658.84 indi-
cates that the priority scheme governs distri-
butions from "any" financial institution. The
broad language of section 658.84 expresses
the Legislature's intent that the Section ap-
ply to distributions on claims against any
financial institution, regardless of the date it
was placed in receivership.

---

**5.** Plaintiffs suggest that the powers exercised by
the RTC pursuant to Section 360.3 may have
exceeded those powers statutorily provided to the
RTC in 12 U.S.C. § 1821(c)(13)(B) ("Section
1821(c)(13)(B)"). Section 1821(c)(13)(B) be-
came effective on December 19, 1992, Pub.L. No.
102–242 § 133(e), (g) (1991), and was in effect at
the time Plaintiff Stattin filed his Complaint and
his summary judgment motion, but was later
eliminated as part of the 1993 amendments to
Section 1821. Section 1821(c)(13)(B) provided
that the "corporation [shall] apply the law of the
State in which the institution is chartered insofar
as that law gives the claims of depositors priority
over those of other creditors or claimants...."
Plaintiffs note that Section 1821(c)(13)(B) only
permits the RTC to apply state's depositor prefer-
ence laws to prioritize claims against state-char-
tered institutions, not federally-chartered institu-
tions, and, in contrast, 12 C.F.R. § 360.3 *permits*
an application of state depositor preference laws
with respect to both state and federally-chartered
institutions. The Court finds Plaintiffs' argu-

ments without merit. The Federal Home Loan
Bank Board was given authority to make rules
and regulations for federally-chartered associa-
tions in conservatorship or receivership pursuant
to Section 5(d)(11) of the Home Owners' Loan
Act of 1933 ("HOLA"), formerly 12 U.S.C.
§ 1464(d)(11). The provisions of HOLA and the
regulations promulgated thereunder continue to
govern the activities of the FDIC and RTC when
acting as conservator or receiver of a depository
institution, pursuant to Sections 401(h) and
401(i) of FIRREA. *See also* 12 U.S.C.
§ 1821(c)(2)(B). Therefore, the RTC did not ex-
ceed its statutory authority in continuing to apply
the provisions of 12 C.F.R. 360.3 to both state
and federally-chartered institutions.

**6.** For example, Section 658.84 regulates distribu-
tions made by a receiver or liquidator appointed
by the State Department of Banking and Fi-
nance.

Generally, a statute should not be interpreted in a manner that makes its words or phrases redundant or meaningless. *Regency Towers Owners Assn., Inc. v. Pettigrew*, 436 So.2d 266, 267 (Fla. 1st DCA 1983), *rev. denied* 444 So.2d 417 (Fla.1984); *see also U.S. v. Canals–Jiminez*, 943 F.2d 1284, 1287 (11th Cir.1991). Plaintiffs' reading of Section 658.84 would render meaningless a portion of the statutory language therein. Under Plaintiffs' interpretation, the statute would set forth a priority scheme for distributions only from those receiverships commenced after the statute's enactment on July 3, 1992. If, however, the distribution scheme applied only to post-enactment receiverships, it would not have been necessary for the Legislature to specify those distributions to which the scheme applied, as a receiver can make no distributions on claims against an institution until the commencement of its receivership. Plaintiffs' interpretation of the statute thus renders meaningless or unnecessary the clause therein which provides that the priorities apply "for any distribution made after July 3, 1992." In contrast, all phrases within the statute acquire meaning under an interpretation in which the priority scheme applies to all distributions made after July 3, 1992 from both pre-enactment and post-enactment receiverships.

Lastly, the legislative history of Section 658.84, although sparse, supports a finding that the section establishes priorities for distributions from receiverships established both before and after its enactment. The Legislature's draft version of Section 658.84 established the applicable priorities for unsecured claims, but did not include the phrase "for any distribution made after July 3, 1992." Had Florida enacted the draft version into law, it would have been unclear whether the Legislature intended the distribution scheme to have the retrospective effect of reordering previously established priorities and imposing new priorities for distributions made subsequent to the statute's enactment. However, Florida's Legislature added the above-quoted phrase prior to the enactment of the provision, evidencing its intent to cause such a reordering for any distribution made after July 3, 1992.

Because the Court has determined that the Florida Legislature intended Section 658.84's priority scheme to apply to distributions from receiverships established both before and after that section's enactment, the priorities set forth therein govern all distributions on Plaintiffs' claims.[7] Accordingly, the RTC properly applied that section when declaring its intent to make distributions to depositors, and the RTC as subrogee for uninsured depositors, prior to making any distributions to Plaintiffs.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1. Plaintiff Stattin's Motion for Summary Judgment (Dkt. 5) is DENIED.

2. Defendants' Cross–Motion for Summary Judgment (Dkt. 35) is GRANTED.

3. The Court's rulings on Plaintiff Stattin's Motion for Summary Judgment and on Defendants' Cross–Motion for Summary Judgment stand over and bind Plaintiffs in consolidated Case Nos. 94–1567–CIV–T–21E, 94–1568–CIV–T–21A, and 94–1569–CIV–T–21B.

4. All pending motions in the lead case and consolidated cases which the Court has not addressed herein, are DENIED as MOOT.

5. The Clerk is DIRECTED to enter judgment against Plaintiffs in the lead case and all consolidated cases.

**DONE AND ORDERED.**

---

7. It does not appear, from a review of the parties' submissions herein, that any Plaintiff received a distribution on his claim prior to July 3, 1992.