69 F.3d 355
 27 UCC Rep.Serv.2d 1386, 95 Cal. Daily Op.
Serv. 8413,
95 Daily Journal D.A.R. 14,523
 DEL E. WEBB McQUEEN DEVELOPMENT CORPORATION, an Arizona
Corporation, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, a United States government
corporation as Receiver for Sun State Savings,
FSA, as successor to Sun State Savings
and Loan Association,
Defendant-Appellee.
 No. 94-15266.
 United States Court of Appeals,
Ninth Circuit.
 Argued Sept. 15, 1995.
Submission Deferred Sept. 15, 1995.
Resubmitted Oct. 2, 1995.
Decided Oct. 30, 1995.
 
 E. Jeffrey Walsh, Snell & Wilmer, Phoenix, Arizona, for plaintiff-appellant.
 E. Scott Dosek, Kutak Rock, Phoenix, Arizona, for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before: BEEZER and THOMPSON, Circuit Judges, and EZRA, District Judge.*
 OPINION
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 In this case we hold that a standby letter of credit in favor of Del E. Webb McQueen Development Corporation (Del Webb) was not an accrued and unconditionally fixed liability of the former Sun State Savings and Loan Association (Sun State) at the time Sun State was placed in receivership by the Office of Thrift Supervision (OTS). Sun State's obligation to pay Del Webb on the letter of credit was contingent upon default under a promissory note, and on the date Sun State was placed in receivership the note was not in default. Because Sun State's obligation to pay the letter of credit was contingent, the Resolution Trust Corporation (RTC) properly classified Del Webb's claim under the letter of credit as a priority 7 and not a priority 6 claim, pursuant to 12 C.F.R. Sec. 360.2.[1]
 
 
 2
 * FACTS
 
 
 3
 On December 31, 1986, Sun/Kawa Joint Venture (Sun/Kawa), an Arizona general partnership comprised of Sun State and Robert J. Kawa, bought a real estate option from Del Webb for $1 million. No money changed hands. Instead, Sun/Kawa gave Del Webb its promissory note dated December 31, 1986 (the note). The note required Sun/Kawa, the maker, to pay Del Webb, the payee, annual installments of $50,000, and to pay the entire unpaid balance of principal and interest on or before December 31, 1993. The Sun/Kawa partners were liable for costs of collection, but otherwise the note was nonrecourse. The note was secured by an irrevocable standby letter of credit issued by Sun State in favor of Del Webb.
 
 
 4
 In 1987 and 1988, Sun/Kawa paid the required annual installment payments. On June 14, 1989, the Federal Savings & Loan Insurance Corporation (FSLIC) declared Sun State insolvent and appointed itself conservator. On August 9, 1989, the RTC succeeded the FSLIC as conservator of "new" Sun State. New Sun State assumed substantially all of the liabilities and received most of the assets of old Sun State. New Sun State paid the $50,000 installment due December 31, 1989.
 
 
 5
 On November 30, 1990, new Sun State was declared insolvent by the OTS and the RTC was appointed receiver. The $50,000 installment due December 31, 1990 was not paid. Instead, by letter dated January 15, 1991, the RTC repudiated the note and letter of credit, pursuant to 12 U.S.C. Sec. 1821(e). At that time, the face amount of the letter of credit was $939,250.00.
 
 
 6
 Del Webb filed a timely proof of claim with the RTC. Having heard no response from the RTC, on July 22, 1991 Del Webb presented a sight draft demanding payment of the letter of credit. The RTC refused to honor it.
 
 
 7
 Del Webb filed suit on August 14, 1991, still having heard no response from the RTC on its proof of claim. After initially disallowing the claim in its entirety, the RTC reconsidered. By letter dated October 20, 1992, the RTC notified Del Webb that under the creditor prioritization scheme set forth in 12 C.F.R. Sec. 360.2, it had classified Del Webb's claim as an unaccrued priority 7 claim in the amount of $940,000.
 
 
 8
 The RTC moved for summary judgment. In opposition, Del Webb argued that the claims payment process for Sun Savings was governed by the National Bank Act (NBA), which required ratable distribution of Sun State's assets. In the event the NBA did not apply, Del Webb argued its claim should be classified as a priority 6, not a priority 7, claim.
 
 
 9
 The difference between a priority 6 and a priority 7 claim is significant in this case. The RTC concedes that unlike priority 6 claimants, who have thus far been paid 28.24 cents on the dollar, priority 7 claimants probably won't be paid anything.
 
 
 10
 The district court held that the NBA's ratable distribution requirement did not apply. The court further held that the RTC had not improperly classified Del Webb's claim as a priority 7 claim, because at the time Sun State was placed in receivership Del Webb had no right to draw on the letter of credit. This appeal followed.
 
 
 11
 We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 II
 STANDARD OF REVIEW
 
 12
 We review de novo a district court's summary judgment, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), and give deference to an administrative agency's interpretation of its own regulations. Montana Power Co. v. EPA, 608 F.2d 334, 344 (9th Cir.1979) (citing Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).
 
 III
 DISCUSSION
 A. Applicability of the National Bank Act
 
 13
 The NBA requires ratable distribution of assets of a failed national banking association "so that each creditor receives his fair share of the payment as it relates to the total sum to be distributed." Citizens State Bank v. FDIC, 946 F.2d 408, 413 n. 11 (5th Cir.1991). Del Webb contends the RTC violated the NBA, 12 U.S.C. Secs. 91 and 194, by treating its claim differently from others.
 
 
 14
 We reject Del Webb's argument, because the ratable distribution requirement of the NBA does not apply to the liquidation of a savings and loan association. See Senior Unsecured Creditors' Comm. First RepublicBank Bank Corp. v. FDIC, 749 F.Supp. 758, 774 n. 24 (N.D.Tex.1990) (FSLIC was never subject to the ratable distribution requirement of the National Bank Act). Old Sun State was a state-chartered savings association, and new Sun State was a federally-chartered savings association chartered by the Federal Loan Home Bank Board (FLHBB). Unlike the Federal Deposit Insurance Corporation (FDIC), which is required to comply with the NBA, the FLHBB has been given plenary authority to make rules and adopt regulations governing receiverships and conservatorships of savings and loan associations. Stattin v. RTC, 883 F.Supp. 678, 683 n. 5 (M.D.Fla.1995) (citing section 5(d)(11) of the Home Owners' Loan Act of 1933, formerly 12 U.S.C. Sec. 1464(d)(11)).
 
 
 15
 Acting on this authority, the FLHBB promulgated 12 C.F.R. Sec. 360.2 to classify payment of claims in FSLIC receiverships. See 53 Fed.Reg. 25129-02 (1988). In doing so, it chose not to establish a ratable distribution system. See Senior Unsecured Creditors' Comm., 749 F.Supp. at 774 n. 24. Despite the replacement of the FLHBB and FSLIC by the RTC, the regulations promulgated by those agencies, including section 360.2, remain in effect. Stattin, 883 F.Supp. at 683 n. 5 (citing the Financial Institutions Reform, Recovery Enforcement Act, Secs. 401(h) & 401(i)). The NBA's ratable distribution requirements are not applicable to this case.
 
 
 16
 B. Accrued and Unconditionally Fixed Requirement
 
 
 17
 The RTC argues, and the district court agreed, that Del Webb's claim was properly classified as a priority 7 claim because Del Webb could not draw on the letter of credit until after Sun State defaulted on the note. Because the default occurred after the RTC had taken over as receiver for Sun State, the debt had not become accrued and unconditionally fixed prior to receivership as required for a priority 6 claim under 12 C.F.R. Sec. 360.2. We agree.
 
 
 18
 Pursuant to section 360.2, the RTC classifies and assigns priorities to unsecured claims against a savings and loan association or receiver. A priority 6 claim is paid before a priority 7 claim. 12 C.F.R. Sec. 360.2(d). Under section 360.2, priority 6 claims are "[c]laims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated...." 12 C.F.R. Sec. 360.2(a)(6) (emphasis added). Priority 7 claims are "[c]laims other than those that have accrued and become unconditionally fixed on or before the date of default." 12 C.F.R. Sec. 360.2(a)(7) (emphasis added).
 
 
 19
 The term "date of default" as used in 12 C.F.R. Sec. 360.2 means the date the conservator or receiver of the association was appointed. 12 U.S.C. Sec. 1813(x)(1). In this case, the parties agree the "date of default" was November 30, 1990, when new Sun State was placed in receivership.[2] The question is whether Del Webb's claim had "accrued and become unconditionally fixed" at that time.
 
 
 20
 Del Webb's claim arises from the nonrecourse note made by Sun/Kawa and secured by Sun State's irrevocable standby letter of credit. The note provides that default occurs upon one of two conditions:
 
 
 21
 (1) if [Sun/Kawa] shall fail to pay any amount owing on this Note when due and such failure shall continue for a period of ten (10) days after written notice thereof to [Sun/Kawa]; or (2) if [Sun/Kawa] shall dissolve, terminate existence, become insolvent, petition to have appointed or have appointed a receiver, made (sic) an assignment for creditors, or institute or have instituted against it bankruptcy, insolvency, or any other reorganization or creditor proceedings and any such proceeding shall not be dismissed not later than thirty (30) days after written notice of default to [Sun/Kawa].
 
 
 22
 In the event of such a default, the unpaid principal balance "become[s] immediately due and payable."
 
 
 23
 All payments were made under the note until December 31, 1990. On that date, the 1990 payment became due, and the RTC as receiver for Sun State refused to pay it. When this nonpayment continued for a period of ten days after written notice, the note was in default.
 
 
 24
 Default would also occur under the note if Sun/Kawa became insolvent. There is no evidence in the record that this occurred. The only evidence is that Sun State, one of the Sun/Kawa general partners, became insolvent.
 
 
 25
 The default on the note, therefore, occurred after November 30, 1990, Sun State's "date of default." Because Sun State's obligation to pay Del Webb under the letter of credit was contingent upon a default on the note, Sun State's obligation under the letter of credit had not "accrued and become unconditionally fixed on or before the date of [its] default" as a savings association. 12 C.F.R. Sec. 360.2(a)(6).
 
 
 26
 Del Webb argues it is not the date the note went into default that triggered Sun State's accrued and unconditional liability under the letter of credit. Del Webb contends Sun State's liability on the letter of credit was accrued and unconditional the day the letter of credit was issued. In support of this argument, Del Webb relies upon First Empire Bank v. FDIC, 572 F.2d 1361 (9th Cir.), cert. denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
 
 
 27
 In First Empire, we were asked to determine whether the beneficiary of a standby letter of credit had a provable claim under the NBA when the principals defaulted on their primary loan obligations after the bank was placed in receivership. Id. at 1366. We recognized the contingent nature of standby letters of credit, but we considered them a special subclass of contingent claims because their "worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estates". Id. at 1369 (quoting Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721, 739-40 (2d Cir.1912)). Applying equitable principles of receivership, we held that standby letters of credit, "which are certain when presented and which are presented in time" for distribution from the receivership estate, and which are not "dependent on new contractual obligations arising after insolvency," are "provable" claims for which the estate is liable. Id. at 1367-69.
 
 
 28
 First Empire thus holds that even though a standby letter of credit is contingent, if the letter of credit is in existence prior to insolvency, it is a "provable" claim under the NBA. See also Citizens State Bank v. FDIC, 946 F.2d 408 (5th Cir.1991).
 
 
 29
 In the present case, we are not asked to determine whether Del Webb's claim based on Sun State's standby letter of credit is a provable claim under the NBA. Rather, we must determine whether Del Webb's claim had "accrued and become unconditionally fixed" under 12 C.F.R. Sec. 360.2 for the purpose of assigning that claim a priority in the liquidation of a savings association chartered by the FLHBB. First Empire is not controlling on this issue.
 
 
 30
 Del Webb also relies on Breakers Point Homeowners Ass'n v. RTC, 829 F.Supp. 336 (D.Or.1992). The Breakers Point court is the only court that has addressed the application of the phrase "accrued and become unconditionally fixed" to a somewhat similar factual scenario. In that case, a savings and loan association agreed to settle a lawsuit by making six annual installment payments to a homeowners' association. Id. at 337. Three years later, the savings and loan was declared insolvent, and the RTC was appointed its receiver. Id. The RTC classified the association's subsequent claim for the three outstanding annual payments as a priority 7 claim. Id. The homeowners' association brought suit arguing its claim should have been classified as a priority 6 claim. Id. The district court held the association's claim had "accrued and become unconditionally fixed" prior to the date of default and therefore should have been classified as a priority 6 claim. Id. at 339.
 
 
 31
 Breakers Point did not involve a standby letter of credit. There, the only event upon which the plaintiffs' right to payment depended was the passage of time. The obligation to pay was not contingent. It was fixed.[3]
 
 
 32
 In the present case, Del Webb was not entitled to payment under the letter of credit unless Sun/Kawa defaulted on the note. This was a contingency upon which Sun State's obligation to pay depended. The contingency had not occurred when Sun State was placed in receivership, and this prevented Sun State's standby letter of credit from being "accrued and unconditionally fixed" at that time. Breakers Point is inapposite.
 
 C. Equity
 
 33
 Invoking equity, but citing no authority, Del Webb contends its claim should be reassigned as a priority 6 claim. Del Webb argues the RTC made the December 31, 1989 payment on the Sun/Kawa note to delay Del Webb from demanding payment on the letter of credit until after Sun State was placed in receivership. Del Webb argues the RTC unjustly manipulated the timing of the December 31, 1989 payment and the November 30, 1990 receivership to defeat Del Webb's rights under the letter of credit. We disagree.
 
 
 34
 The RTC is often required to act in different capacities as a conservator and as a receiver. The RTC, as conservator, operates an institution with the hope that it might someday be rehabilitated. The RTC, as receiver, liquidates an institution and distributes its proceeds to creditors according to the priority rules set out in the regulations. There is no hope of rehabilitation when an institution is placed in receivership.
 
 
 35
 The actions the RTC may take as a conservator may or may not be consistent with the acts it may take as a receiver. See 1185 Ave. of Americas Assocs. v. RTC, 22 F.3d 494, 497 (2d Cir.1994) (citing RTC v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446, 1454 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992)). Here, it was perfectly reasonable for the RTC as conservator to make the annual installment payment of $50,000 on December 31, 1989. That payment precluded a default under the note which would have triggered a $1 million obligation to pay the letter of credit.
 
 IV
 CONCLUSION
 
 36
 We conclude the NBA's ratable distribution requirement is inapplicable to the liquidation of a savings and loan association. Pursuant to 12 C.F.R. Sec. 360.2, the RTC properly classified Del Webb's claim as a priority 7 claim, because Sun State's obligation to pay the standby letter of credit was a contingent obligation on the date Sun State was placed in receivership. As of that date, the contingency of default on the underlying note had not occurred, and Sun State's obligation to pay the standby letter of credit was not "accrued and unconditionally fixed."
 
 
 37
 AFFIRMED.
 
 
 
 *
 The Honorable David A. Ezra, District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The parties and the district court referred to 12 C.F.R. Sec. 360.2 as the section at issue in this case. Effective January 21, 1994, 12 C.F.R. Sec. 360.2 was redesignated at 12 C.F.R. Sec. 360.3 without substantive change. See 58 Fed.Reg. 67664 (1993). To avoid confusion, we continue to refer to the old section 360.2
 
 
 [2]
 The "date of default" actually may have been June 14, 1989, when old Sun State was declared insolvent and the FSLIC was appointed conservator. "Default" is defined by 12 U.S.C. Sec. 1813(x)(1):
 The term "default" means, with respect to an insured depository institution, any adjudication or other official determination by any court of competent jurisdiction, the appropriate Federal banking agency, or other public authority pursuant to which a conservator, receiver, or other legal custodian is appointed for an insured depository institution or, in the case of a foreign bank having an insured branch, for such branch.
 Because it makes no difference in resolving the issues in this appeal whether the date of default was June 14, 1989 or November 30, 1990, we do not decide which date was the actual date of default. Instead, taking the parties at their word, we assume the date of default was November 30, 1990.
 
 
 [3]
 To the extent Breakers Point may have suggested a contingent obligation can be an "unconditionally fixed" obligation within the meaning of 12 C.F.R. Sec. 360.2, we overrule it